**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

JOSEPH PILEWSKY,

                            Plaintiff,

vs.                                       CASE NO: 2:06-cv-366-FtM-29SPC

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

_____

**REPORT AND RECOMMENDATION[2]**

_____This matter comes before the Court on the Plaintiff, Joseph Pilewsky's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. #1) filed on July 21, 2006.  The Plaintiff filed his Memorandum of Law in Support of the Complaint (Doc. #17) on January 12, 2007.  The Commissioner filed a Memorandum of Law in Support of the Commissioner's Decision (Doc. #18) on February 12, 2007.  Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

_____

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25(d)(1), the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Jo Anne B. Barnhart as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## **FACTS**

### *Procedural History*

On November 4, 2002, the Plaintiff filed an application for a period of disability and Disability Benefits alleging an onset disability date of October 23, 2002.  (Tr. 17, 47-49).  The Plaintiff's application was denied initially and upon reconsideration.  (Tr. 17).  The Plaintiff timely filed a Request for Hearing on November 17, 2003.  (Tr. 46).  A hearing was held before the Honorable Elving L. Torres, Administrative Law Judge (ALJ), on April 1, 2005, in Tampa, Florida.  (Tr. 263-286).  The ALJ issued an unfavorable decision on October 6, 2005.  (Tr. 15-24). The Plaintiff timely filed a Request for Review on April 10, 2006.  (Tr. 7-13).  The Appeals Council denied the Plaintiff's request for review.  (Tr. 3-5).  Therefore, the ALJ's decision became the final action of the claim. Having exhausted all administrative remedies, the Plaintiff timely filed a Complaint with this Court.

### *Plaintiff's History*

The Plaintiff was born on April 15, 1954, making the Plaintiff (fifty-one) 51 years old at the time of the hearing.  (Tr. 22).   The Plaintiff was considered to be an individual closely approaching advanced age.  (Tr. 22).  The Plaintiff was forty-eight (48) years old and considered a "younger individual", on his alleged onset disability date.  (Tr. 22).  The Plaintiff has a high school education and no transferable skills from semi-skilled work.  (Tr. 22).  The Plaintiff has past relevant work as a septic tank servicer, carpenter, truss assembler, and maintenance engineer.  (Tr. 21).

### *Medical and Psychological History*

Medical records dating back to December 1991 show the Plaintiff suffered a tibial plateau fracture and a tibial metaphyseal shaft fracture as a result of a barroom brawl.  (Tr. 112).  The

Plaintiff underwent an open reduction and internal fixation of his leg on December 9, 1991.  (Tr. 112).  The Plaintiff recovered successfully.  (Tr. 19).

On May 7, 2000, the Plaintiff presented to the Lee Memorial HealthPark Medical Center emergency room.  (Tr. 127).  The Plaintiff complained of muscle spasms and stiffness in his neck and upper back as a result of a  motor vehicle accident that occurred twenty-four (24) hours prior.  (Tr. 127).  X-rays of the cervical spine demonstrate no evidence of fracture or instability.  (Tr. 127).  The Plaintiff was prescribed a soft cervical collar and muscle relaxants to be taken at home only.  (Tr. 128).

On May 10, 2007, the Plaintiff presented to Dr. Victor J. Drobnic, D.C. for treatment.  (Tr. 129-131).  The Plaintiff complained of constant pain and stiffness in the bilateral region of the neck, increased by bending the neck left and right, constant pain in both shoulder joints and pain across both shoulders, and frequent pain and numbness  in both hands, and intermittent pain and muscle spasms in the bilateral mid-back. (Tr. 129).   Dr. Drobnic opined the Plaintiff's condition as a result of the bony/soft tissue injury had not reached a medically stationary status at that time.  (Tr. 131).  The Plaintiff's prognosis was that he would reach maximum chiropractic improvement within six (6) months and was fair.  (Tr. 131).

On May 16, 2000, the Plaintiff underwent an x-ray of the cervical spine with Dr. Michael Carlino, Radiologist.  (Tr. 154). The prevertebral soft tissues appeared  unremarkable.  (Tr. 154). There appeared to be limited motion between neutral positioning and extension.  (Tr. 154).  There was some indentation involving the inferior margin of the C3 vertebral body.  (Tr. 154).  Dr. Carlino opined that  he did not feel it was of clinical significance.  (Tr. 154).  There appeared to be some mild posterior disc space loss at C5-6.  (Tr. 154).  The remainder of the disc spaces were well maintained.

3

(Tr. 154).

On September 28, 2000, the Plaintiff presented to Dr. Razak Dosani of the emergency room with complaints of anterior chest pain and shortness of breath. (Tr. 157). Upon examination, the Plaintiff appeared well-built, well-nourished, awake, alert, and in no acute distress. (Tr. 157). Laboratory tests revealed the prothrombin time was normal. (Tr. 156). CK MB was normal, electrolytes were unremarkable except for BUN of 22. (Tr. 156). The telemetry and chest x-ray was normal. (Tr. 156). After 7 minutes and 8 seconds of exercise, the Plaintiff's blood pressure was 110/70 and peaked at 160/70. (Tr. 156). There was no angina or arrhythmia. (Tr. 156). There were non-specific electrocardiogram changes. (Tr. 156). The nuclear scan was read as negative. (Tr. 156). The electrocardiogram showed normal sinus rhythm, mild non-specific changes, V1 to V3 and in lead III. A second electrocardiogram was performed on September 29, 2000 and the results were unchanged. (Tr. 156). Dr. Dosani admitted the Plaintiff and planned on telemetry monitoring, serial creatinine phosphokinases and electrocardiograms. (Tr. 156). However, after the Plaintiff had a stress test done which yielded negative results. The Plaintiff was discharged with instructions to take Ecotrin one a day. (Tr. 156).

On January 9, 2003, the Plaintiff presented to Dr. Joseph J. White, Ph.D., on referral by the Office of Disability Determinations for a psychological evaluations. (Tr. 183). The Plaintiff presented with good personal hygiene and dressed appropriately. (Tr. 184). His speech was rapid and his thoughts were confused. (Tr. 184). He rambled and had difficulty staying focused. (Tr. 184). The Plaintiff appeared agitated and had a depressed affect. (Tr. 184). He became teary-eyed during the interview. (Tr. 184). The Plaintiff's judgment and insight were fair and his IQ was estimated in the low average range. (Tr. 184). The Plaintiff had a history of depression and alcohol

4

abuse. (Tr. 184). Dr. White opined the Plaintiff suffered from depressive disorder, alcohol abuse (Axis 1), and post right knee surgery with chronic pain in the right knee, lower back, neck, right hand and head (Axis III). (Tr. 184). The Plaintiff also showed poor balance. (Tr. 184). He was capable of driving, cooking, and managing his own funds. (Tr. 185). Dr. White opined the Plaintiff's current depression and alcohol abuse was considered to be a barrier to his overall functioning. (Tr. 185).

On January 20, 2003, the Plaintiff presented to Dareld Morris, MD, of the Morris Medical Center, P.A., for a consultative examination. (Tr. 186-189). Upon examination, the Plaintiff was found to be in no acute distress and interacted with the staff and physician appropriately. (Tr. 187). The Plaintiff's gait/ambulation was antalgic from right knee dysfunction. (Tr. 187). The Plaintiff walked with a cane for assistance. (Tr. 187). Pinch and grip testing were within normal limits at +4/5. Range of motion was abnormal. (Tr. 187). The cervical compression test, cervical O'Donahue's test, scapular approximation test, and straight leg raising test were within normal limits. (Tr. 187). There was no palpable spasm or trigger points noted. (Tr. 187). Dr. Morris noted the Plaintiff can perform activities of daily living regarding grip strength and fine manipulation. (Tr. 188). The Plaintiff can perform activities associated with memory, communication, and social interaction. (Tr. 188). Dr. Morris opined there was insufficient objective data to support this patients subjective complaints of neck and back pain. (Tr. 188).

On February 26, 2003, Arthur H. Hamlin, Psy.D., completed a mental Residual Functional Capacity (RFC) Assessment and a Psychiatric Review Technique Form. (Tr. 190-206). In the mental RFC assessment, Dr. Hamlin opined the Plaintiff was not limited in remembering locations and work-like procedures. (Tr. 190). The Plaintiff was capable of carrying out very short and simple instructions, could perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances.  The Plaintiff was able to sustain an ordinary routine without special supervision and work with others without being distracted.  (Tr. 190).  The Plaintiff was found to be limited in understanding, remembering and carrying out detailed instructions, and maintaining attention and concentration for extended periods.  (Tr. 190).  Dr. Hamlin opined the Plaintiff was capable of maintaining CPP sufficient to complete simple, repetitive, unskilled tasks.  (Tr. 192).  Dr. Hamlin referred to the Psychiatric Review Technique Form. (Tr. 192).

In the Psychiatric Review Technique Form, Dr. Hamlin noted the Plaintiff suffered from affective disorders and substance abuse disorders.  (Tr. 194).  Specifically, the Plaintiff's medically determinable impairments consisted of Depressive Disorder and alcohol abuse.  (Tr. 199, 202).  Dr. Hamlin noted a moderate limitation in maintaining concentration, persistence or pace, mild limitation in activities of daily living and  maintaining social functioning, and no episodes of decompensation. (Tr. 234).  Dr. Hamlin stated the Plaintiff's speech was rapid, thoughts were confused and the Plaintiff presented an agitated, depressed affect.  (Tr. 206). The Plaintiff became teary-eyed but showed no formal thought disorder and was not seen to be psychotic.  (Tr. 206).  The Plaintiff showed poor attention and concentration with inadequate short term memory. (Tr. 206).  Dr. Hamlin concluded there was minimal reduction in function attributable to a mental disorder. (Tr. 206).

On March 26, 2003, a State Agency consultant completed a Physical Residual Functional Capacity Assessment (Tr. 208-215). The Plaintiff retained the RFC to occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand and/or walk for at least two (2) hours in an eight (8) hour workday (noting about four (4) hours), sit for about six (6) hours in an eight (8) hour workday, and was unlimited in pushing or pulling. (Tr. 209). Extremity pulses were palpable, there was no edema, atrophy, cyanosis or claudication, and Drawer, Apley, Baber, and Lachman tests were

6

unremarkable. (Tr. 209). Pinch and grip were normal.  (Tr. 209). The Plaintiff was occasionally limited in climbing, balancing, stooping, kneeling, crouching, and crawling, and should avoid exposure to extreme cold and vibration. (Tr. 212).  The consultant concluded that, based upon the Plaintiff's less than credible symptoms and the objective medical evidence, the Plaintiff was capable of performing job duties within the parameters outlined in the RFC.  (Tr. 213).

On May 15, 2003, the Plaintiff presented to the Family Health Center.  (Tr. 216A).  The Plaintiff complained of low back pain and neck pain.  (Tr. 216A).  Upon examination, there was no lumbar or paraspinal tenderness.  The Plaintiff was prescribed Ibuprofen 800 mg for pain.  (Tr. 216A).

On August 29, 2003, Murthy Ravipati, M.D., a state agency physician, completed a Physical Residual Functional Capacity Assessment. (Tr. 225-232).  Dr. Ravipati opined the Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, stand and/or walk about six (6) hours in an eight (8) hour workday, sit about six (6) hours in an eight (8) hour workday, and unlimited pushing and/or pulling.  (Tr. 226).  The Plaintiff was to avoid heights and, extreme cold and heat.  (Tr. 229)Dr. Ravipati noted x-rays revealed the Plaintiff's tibial injury was healed.  (Tr. 227). Dr. Ravipati stated the use of the cane is unjustified.  (Tr. 227).  Further, Dr. Ravipati found the Plaintiff's symptoms were attributable to polyarthragias however, the severity to the extent of total disability, was not supported.  (Tr. 230).

### Administrative Law Judge's Decision

The ALJ found  the Plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through the date of the decision.(Tr. 23).  The Plaintiff has not engage in substantial

gainful activity since the alleged onset of disability. (Tr. 23). The ALJ found the Plaintiff's history of a very old right tibia fracture and, since August 23, 2003, a depressive disorder with a history of alcohol abuse are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 23). However, these medically determinable impairments do not singly or in combination meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 23). The ALJ concluded the Plaintiff's allegations regarding his limitations and inability to work were not credible. (Tr. 23). The ALJ further concluded the Plaintiff has the residual functional capacity to perform a wide range of medium work as set forth in the body of the instant decision. (Tr. 23). The ALJ found the Plaintiff is unable to perform any of his past relevant work. (Tr. 23). The ALJ noted the Plaintiff was an "individual closely approaching advanced age" who was a "younger individual" on his alleged onset disability date and that the Plaintiff has a high school or high school equivalent education. (Tr. 23). The ALJ found the Plaintiff had no transferrable skills from sem-skilled work previously performed. (Tr. 23). The ALJ also found although the Plaintiff's exertional limitations do not allow him to perform a full range of medium work, using the Medical-Vocational Rule 203.22 and 203.29 as framework for decision making, there are a significant number of jobs in the national economy that he could perform. (Tr. 24). Examples of such jobs include work as cleaner II, bagger and laborer-stores. (Tr. 24). Therefore, the ALJ concluded the Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. (Tr. 24).

## THE STANDARD OF REVIEW

### A. Affirmance

8

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[3].  See 20 C.F.R. §§ 404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

---

[3]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
Step 1.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
Step 2.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
Step 3.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
Step 4.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
Step 5.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

## B. Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42

U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to  be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).   With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[4] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

---

[4]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

## DISCUSSION

The Plaintiff argues the ALJ erred as follows: (1) the ALJ did not support his RFC finding the Plaintiff could work at a medium level of work at step 5 of the evaluation process, (2) the ALJ failed to meet the Commissioners burden at step 5, and (3) the ALJ failed to consider the Plaintiff's neck and back pain as severe at step 2.  The Government maintains the ALJ supported his decision with substantial evidence and applied the correct standards of law.

### *(1) Whether the ALJ Supported His RFC Findings with Substantial Evidence and Met His Burden at Step 5*

At step 4, the ALJ determined the Plaintiff could not return to his past relevant employment which was considered heavy work.  Instead, the ALJ found the Plaintiff had the RFC range of medium work with a limitation that prohibited employment that limited very detailed instructions. The ALJ then used that determination along with the advice and opinion of a VE at step 5 to determine the Plaintiff was not disabled.

At step 5, the burden is on the Commissioner to establish the capacity to perform other work and thereby to establish the claimant's RFC. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish the claimant could perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v.Sullivan, 880 F.2d 1200, 1201 (11th Cir.

The Plaintiff states the ALJ improperly based his RFC determination on the absence of evidence.  Therefore, the ALJ's determination at step 5 was supported by an invalid RFC.  As

13

grounds for his assertion, the Plaintiff argues the ALJ failed to provide a physical capacities evaluation (PCE) from a treating or examining physician, the ALJ did not consider the instability in the Plaintiff's leg/knee, and the ALJ did not discount the State Agency Consultants opinion the Plaintiff could work at light work while the ALJ determined the Plaintiff could work at a medium level of exertion.

<u>(a) Whether the ALJ's RFC Determination Requires a Treating Physicians PCE</u>

The Plaintiff argues the ALJ's RFC determination allowing the Plaintiff to perform medium work at step 4 was not supported by substantial evidence.  The Plaintiff argues the RFC assessment must be based upon a physical capacities evaluation provided by a treating or examining source before the ALJ can make his determination.  Therefore, according to the Plaintiff, the ALJ must supply medical evidence from a physician that directly supports his position in making an RFC determination at step 4 or the government fails to meet its burden at step 5.  However, the Plaintiff confuses the burdens between step 4 and step 5.

In support of his argument the Plaintiff cites to <u>Coleman v. Barnhart</u>, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003), and <u>Napier v. Apfel</u>, 1999 U.S. Lexis 3297, * 7-9 (S.D. Ala. 1999).  In <u>Coleman</u>, Magistrate Judge William Cassady, held "this Court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician." 264 F. Supp. 2d at 1010.  In <u>Napier</u>, Magistrate Judge Cassady again states the ALJ merely relies on the absence of evidence to establish Napier's residual functional capacity "rather than evidence from a treating or examining physician (or for that matter a non-examining physician) regarding [the]

14

plaintiff's residual functional capacity . . . this burden simply cannot be met by a lack of evidence but instead must be supported by the residual functional capacity assessment of a treating physician." 1999 Lexis 3297 at * 7.

The Plaintiff's misapplies the RFC standard and the Napier and Coleman holdings.  First the issue here is whether or not there was sufficient evidence to support the Plaintiff's claim and not whether the ALJ made a conclusion based upon no evidence.  In Napier, and Coleman, Magistrate Judge Cassady found the ALJ did not support his RFC decision with any evidence and held that an RFC cannot be based upon a lack of evidence.  Here, the ALJ cited to the medical record including the Plaintiff's examining physician from the VA.  Furthermore, Magistrate Judge Cassady's requirement that a treating physician must perform a physical capacities evaluation on the Plaintiff prior to the ALJ making an RFC evaluation is unpersuasive.  First, Napier, and Coleman, the cases cited by the Plaintiff, arise from the Southern District of Alabama and are not binding authority upon this Court.  Second, the RFC determination is made by the ALJ and not the Plaintiff's physician. 20 C.F.R. § 404.1520(f).  And finally, and more importantly, the holding, as interpreted by the Plaintiff, impose a higher standard upon the ALJ's RFC determination than that required by the Regulations.

The determination of the Plaintiff's RFC is within the authority of the ALJ. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).  The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite his impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The ALJ determines the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1545(a)(3);  Phillips, 357 F.3d at 1238.  That is, the ALJ must determine if the claimant is limited to a particular work level. Id. (citing

15

20 C.F.R. § 404.1567).  In general, the Plaintiff is responsible for providing the evidence the ALJ uses

to make an RFC determination. 20 C.F.R. § 404.1545(a)(3).

Thus, contrary to the Plaintiff's assertion, the Regulations do not require a physical capacities

evaluation by a treating physician or a group of physicians in order for the ALJ to make an RFC

determination.  Instead, the Regulations only require the ALJ to make an RFC determination after

he reviews all of the medical and other evidence presented by the Plaintiff.

After completing his review of the medical file, the ALJ held:

> While the claimant has alleged disability due to back and neck pain,
> there is no objective evidence of a spine disorder, much less severe.
> The objective medical evidence shows that the claimant has an old
> fracture of the tibia in 1991 but was able to work thereafter for 12
> years including at the medium and heavy exertion work.  However,
> giving some credibility to the claimant's allegations of pain and
> considering the fact that he is no longer a younger individual, his
> complaints, while not objectively supported, would be found to
> decrease his functional capacity to that of medium exertion physically
> along with the mental restrictions included in the below stated residual
> functional capacity.

(Tr. 21).

In reaching his RFC determination, the ALJ reviewed the Plaintiff's complete medical history.

The ALJ begins by noting the Plaintiff had a history of a very old right tibia fracture from 1991, but

that the Plaintiff was able to keep working after the incident. (Tr. 19).  The ALJ continued noting the

Plaintiff was involved in a motor vehicle accident in May of 2000 where he injured his neck and back.

(Tr. 19).  However, images of the Plaintiff's neck and spine revealed no evidence of fracture or

instability. (Tr. 19).  The Plaintiff was only prescribed a muscle relaxant, pain medication, and moist

heat. (Tr. 19).  The ALJ reviewed the report of Dr. Dareld Morris II, D.O., a consultative physician,

for complaints of neck, back, and knee pain. (Tr. 19).  Dr. Morris opined that "there was insufficient

16

objective data to support [the Plaintiff's] subjective complaint of neck and back pain." (Tr. 19).  He

also remarked  on progress notes from the Family Health Center which "showed that in May 2003

the [Plaintiff] complained of low back pain and neck pain, but his examination revealed negative

straight leg raising and no lumbar spine or paraspinal tenderness." (Tr. 19).  At that time the Plaintiff

was prescribed Ibuprofen "as needed." (Tr. 19).

In addition to the medical reports relating to the Plaintiff's physical condition, the ALJ

considered the Plaintiff's alleged mental impairments.  Dr. Joseph White, Ph.D., gave the Plaintiff a

consultive psychological evaluation.  Dr. White opined the Plaintiff had a depressive disorder and

abused alcohol. (Tr. 20).  The State Agency Psychologist opined the Plaintiff had a depressive

disorder that caused "mild limitation in activities of daily living and social functioning, moderate

limitation in concentration/persistence/pace and no repeated episodes of decompensation. (Tr. 20).

Thus, the ALJ supported his RFC determination with substantial evidence from the record.

### (b) Unstable Knee/Leg

The Plaintiff argues the ALJ did not consider his unstable knee/leg impairment in making his

RFC determination.  During the hearing the ALJ asked the Plaintiff if he had any new injuries. The

Plaintiff answered:

> [b]asically no. The legs have always been injured.  They said – did
> surgery to it but they left the screws in it and its– one of the screws is
> starting to stick out.  Its stating (INAUDIBLE) I might have to get it
> removed . . . .  You can feel it on my right knee.  It's – the screw is
> coming out of my knee.  I might have to get that removed someday,
> I don't know . . . .  They said there was a possibility that I probably
> wouldn't be able to walk on it someday because of the way it was
> broke.

(Tr. 270).  The Plaintiff then states Dr. Morris agrees with the Plaintiff because Dr. Morris found a

"palpable 1 x 1cm mass in his right knee medially."  However, the Plaintiff's mere allegation and/ or

diagnosis of a condition without providing any medical support is not sufficient to establish disability.

Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(c).  Instead,

a claimant must provide medical evidence showing that she has an impairment and how severe it is

during the time the claimant says she is disabled. Ellison, 355 F.3d at 1276.  The Plaintiff presented

no medical diagnostic tests from Dr. Morris or anyone else that his 1 x 1cm mass in his right knee or

any other knee or leg condition had a disabling effect.  As such, the ALJ was not under any

compulsion to address the Plaintiff's leg/knee instability merely based upon the Plaintiff's unsupported

claims.

(c) The State Agency Physicians

The ALJ may reject any medical opinion if the evidence supports a contrary finding.

Wainwright v Commissioner, 2007 WL 708971 (11th Cir. March 9, 2007) (citing Syrock v Heckler,

764 F.2d 834, 835 (11th Cir, 1985)).  However, in his evaluation of the medical evidence, the ALJ

must state with particularity the weight given different medical opinions and the reasons therefor.

Wainwright, 2007 WL 708971 *2; Goberman v. Apfel, 2001 WL 267209 (M.D. Fla. March 12,

2001).  The Plaintiff argues the ALJ erred because he did not discount or evaluate the opinions of the

State Agency Physicians.  The ALJ determined the Plaintiff could work a limited range of medium

work, given his age, physical capabilities, and mental limitations.  The State Agency Physicians, Dr.

A. Messer, M.D., and Dr. Murthy Ravipati, M.D., opined the Plaintiff could perform light work.

While, the ALJ mentioned the decisions of the State Agency Physicians, he did not explain

why he discounted their light work assessment.  The ALJ simply said the State Agency Physicians

RFC would not change the decision the Plaintiff was not disabled. (Tr. 23). SSR 96-6 requires the

18

ALJ to not only consider the program physicians opinions because these physicians are considered experts, but the ALJ must also state, in his decision, the weight he has given to those opinions. *See* Wainwright, 2007 WL 708971 at *2; Goberman, 2001 WL 267209.   The ALJ erred by not discounting or explaining his RFC determination of medium level work in contrast to the State Agency Physicians determination the Plaintiff could work a full range of light work.  As a result, the case should be remanded for the Commissioner to consider the opinions of the State Agency Physicians Dr. Messer, and Dr. Ravipati and the effect of their opinions on the Plaintiff's RFC determination.

<u>*(2) Whether the ALJ Failed to Meet the Commissioners Burden at Step 5*</u>

The Plaintiff argues the ALJ erred and failed to meet his burden at step five because he did not properly evaluate his mental impairments, he failed to properly evaluate the Plaintiff's alcohol abuse, and he failed too in his assessment of the Plaintiff's RFC, therefore posed an improper hypothetical posed to the VE.

(a) Mental Impairments

The Plaintiff argues the ALJ failed to properly consider the Plaintiff's mental impairments in his hypothetical to the VE.  In his decision, the ALJ reviewed the opinion of Dr. White and other State Agency Psychologists. (Tr. 20).  The ALJ held the Plaintiff had a marked limitation in concentration that imposed a restriction for detailed tasks, the Plaintiff could not perform a wide variety of detailed tasks, or complex or technical tasks. (Tr. 21).  The ALJ concluded the Plaintiff was limited to carrying out simple, routine, and repetitive instructions using simple judgment. (Tr. 21).  In his hypothetical the ALJ stated the Plaintiff had a moderate limitation in concentration and a marked restriction for very detailed tasks.  Therefore, the ALJ gave proper consideration to the

Plaintiff's mental restrictions.

### (b) Alcohol Abuse

"Congress amended the Social Security Act to provide that a claimant 'shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Doughty v Apfel, 245 F.3d 1274, 1278-1279 (11th Cir. 2001) (citing  42 U.S.C. § 423(d)(2)(C) (as amended)).  The regulations implementing 42 U.S.C. § 423(d)(2)(C) provides that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then must determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability. Doughty, 245 F.3d at1279 (citing 20 C.F.R. § 404.1535).  "The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol." Doughty, 245 F.3d at1279 (citing 20 C.F.R. § 404.1535(b)(1)).

The Plaintiff argues the ALJ was required to determine what if any of the Plaintiff's impairments would still cause him to be disabled if he did not abuse alcohol.  As a result, the Plaintiff argues, the ALJ failed to consider his alcohol abuse and further erred by not including his alcohol abuse in the  hypothetical posed to the VE.

The Plaintiff bears the burden of proving that his alcohol addiction was not a contributing factor material to his disability determination. Doughty, 245 F.3d at 1280.  Although the ALJ found the Plaintiff's alcohol abuse was a severe impairment at step two, the Plaintiff himself admits that alcohol abuse is no longer a part of his disability.  Since impairments caused by alcohol abuse are not

covered under social security benefits and the Plaintiff himself states alcohol is no longer a problem, there was no reason for the ALJ to review which of the Plaintiff's impairments would be disabling if the Plaintiff ceased abusing alcohol.

### (c) The RFC Determination Hypothetical Posed to the VE

"The RFC determination is used both to determine whether the claimant: (1) can return to his past relevant work under the fourth step; and (2) can adjust to other work under the fifth step." Phillips, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(e)). If the ALJ determines the claimant can return to his past relevant work, the ALJ will conclude the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv)&(f). If the ALJ determines the claimant cannot return to his past relevant work then, the ALJ moves on to step 5. Phillips, 357 F.3d at 1238. At step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy the Plaintiff is able to perform. Phillips, 357 F.3d at 1241 (citing Wolfe v Chater, 86 F.3d 1072, 1077 (11th Cir. 1996)). Once the ALJ determines the claimant cannot return to his past relevant work, the ALJ will  consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v).

In this case, the Plaintiff had past relevant work as a septic tank servicer, carpenter, truss assembler, and maintenance engineer. (Tr. 21). The ALJ found the Plaintiff's past relevant work was semi-skilled in nature and required medium to heavy exertion. (Tr. 21). The ALJ consulted with a vocational expert (VE) and determined the Plaintiff had an RFC of medium level work and therefore, he could not return to his past relevant work. (Tr. 21). However, as noted above, the ALJ did not evaluate and explain the weight given to the opinions of the State Agency Physicians that the Plaintiff was limited to light work. As such, the Court cannot make a determination regarding the ALJ's

hypothetical question to the VE.  Therefore, the Court respectfully recommends the case be remanded

for a determination on whether a new hypothetical should be posed after the Commissioner explains

the weight accorded to the State Agency Physicians has been completed.

### (3) Whether the ALJ Erred by Not Considering the Plaintiff's Neck and Back Pain as Severe at Step 2

The Plaintiff argues the ALJ failed to consider his neck and back pain as a severe impairment

at step 2.    The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude

or mandate a finding of disability.    At step 2 the ALJ is to consider the medical severity of the

claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Phillips, 357 F.3d at 1237.    At step 2, the

ALJ reviewed the Plaintiff's medical records regarding his neck and back complaints and determined

that "[w]hile the claimant has alleged disability due to back and neck pain, there was no objective

evidence of a spine disorder much less severe. (Tr. 21).    In reaching his conclusion, the ALJ

considered the fact the Plaintiff was injured in a motor vehicle accident where he suffered neck and

back injuries. (Tr. 19).    The ALJ noted the imaging of the Plaintiff's cervical spine revealed no

evidence of fracture or instability. (Tr. 19).    Dr. Morris opined there was insufficient objective data

to support the Plaintiff's subjective complaint of neck and back pain. (Tr. 19).    In addition, the

"[p]rogress notes from the Family Medical Clinic show that in May 2003 the claimant complained of

low back pain and neck pain, but his examination revealed negative straight leg raising and no lumbar

spine or paraspinal tenderness. (Tr. 19).

At the second step, the Plaintiff bears the burden of proof that he suffers from a severe

impairment or combination of impairments. Gibbs v. Barnhart, 156 Fed. Appx. 243, 246 (11th Cir.

2005).    The medical evidence in the record clearly demonstrated the Plaintiff's neck and back pain

were not severe.  Therefore, the ALJ did not err in his determination of the Plaintiff's severe impairments at step 2.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The Final Decision of the Commissioner of Social Security (Commissioner) Denying the Plaintiff, Joseph Pilewsky's Claim for Disability Insurance should be **REMANDED** pursuant to 42 U.S.C. § 405 (g)(Sentence Four) for further consideration of the following issues:

(1) The Commissioner is directed to review the opinions of the State Agency Consultants and state with particularity the weight given different medical opinions and the reasons for discounting their light work determination in favor of a medium work determination.

(2) In the event the Commissioner determines the Plaintiff has a light work exertional level thereby changing the ALJ's medium work level determination, then the Commissioner shall call a vocational expert and pose a new hypothetical question with the relevant RFC.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this ___25th___ day of June, 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:
Counsel of record,
MJCD

23